Filed 4/12/16  P. v. Temple CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D067143 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE338940) |
| ALEXANDER JERRY TEMPLE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Patricia K. Cookson, Judge.  Affirmed.

Patrick Morgan Ford, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Kathryn A. Kirschbaum, Deputy Attorneys General, for Plaintiff and Respondent.

## I.

## INTRODUCTION

Defendant Alexander Jerry Temple appeals from a judgment of conviction after a jury convicted him of nine counts of lewd acts on a child and one count of possession of child pornography. On appeal, Temple first contends that the trial court erred in allowing the People to introduce evidence of sexually explicit text messages between Temple and two other individuals in which Temple indicated having a sexual interest in boys the same age as the victim. Temple next contends that the court erred by excluding evidence of the victim's sexual history. We conclude that neither contention has merit, and we affirm the judgment.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.      *Factual background*

1.      *The prosecution case*

Temple met D.L. when D.L. was 11 years old and a participant in the U.S. Naval Sea Cadet Corps, a youth organization. Temple was the "executive officer" in charge of D.L.'s group. At some point, a Sea Cadet officer asked D.L.'s mother if Temple could stay at her home during Sea Cadet training weekends because Temple did not live close by. D.L.'s mother agreed, and for approximately a year and a half, Temple would spend one weekend a month at D.L.'s home.

A few months after Temple started spending weekends at D.L.'s home, Temple began sexually molesting D.L. D.L. was either 11 or 12 years old at the time the

molestations began.  Temple touched D.L.'s penis, over his clothes initially, and then under his clothes.  D.L. touched Temple's penis under Temple's clothes.  Temple also kissed D.L., sometimes using his tongue.  On other occasions, Temple would show D.L. pornographic photos and videos of Temple and Temple's husband.

Temple helped D.L. set up social networking and texting accounts, some of which were geared toward gay men.  Temple sometimes used these accounts to contact D.L., and would occasionally send D.L. naked photographs of himself.

When D.L. was 13, Temple stayed at D.L.'s home for approximately three weeks.  During that time, Temple molested D.L. frequently.  Temple would touch D.L.'s penis, and D.L. would touch Temple's penis.  On the final night of this visit, Temple asked D.L. to accompany him to the car wash.  After they went to the car wash, Temple drove with D.L. to a grocery store parking lot.  While parked in the parking lot, Temple had intercourse with D.L.

A few days later, Temple had a conversation with D.L.'s mother in which Temple told her that D.L. was gay and was afraid to tell her.  D.L.'s mother began to think that Temple may have been involved with her son.  She said, "You need to tell me what you've done to my son.  If I need to get my son help, you need to tell me."  Temple admitted that he had engaged in intercourse with D.L., and admitted to having hugged, kissed, and touched D.L.  D.L.'s mother called the police.

Officers interviewed Temple.  During his first interview, Temple admitted that he had engaged in sexual intercourse with D.L. while they were in the grocery store parking lot.  He said that he had taken D.L. to the parking lot to talk with him, but once they

3

arrived there, they started kissing each other and touching each other, instead.[1] During the interview, Temple denied having molested D.L. prior to the parking lot incident, but he conceded that they had "cuddled" on prior occasions and had touched each other over their clothing "a little bit."

During a subsequent interview, Temple denied molesting D.L. He implied that the incident in the grocery store parking lot had involved his husband, and not D.L. Temple also said that it was D.L. who had taken Temple's hand and made Temple touch him a few times. According to Temple, D.L. had tried to touch Temple approximately once a day, but Temple would "just push him off." Temple mentioned during this interview that D.L. had told him that he had "been with over thirty guys." Despite initially denying any molestation during this interview, by the end of the interview, Temple again confessed to engaging in intercourse with D.L., although he claimed that D.L. had initiated the encounter.

2.    *The defense case*

Temple testified at trial. He asserted that he and D.L. would "horseplay" and "play[ ] around," but he denied having touched D.L. in a sexually inappropriate way. He also denied having any sexual attraction to D.L.

Temple explained that during the three-week period he stayed at D.L.'s home, D.L. told Temple that he was gay. According to Temple, D.L. had tried to touch him sexually

---

[1]    During this interview, Temple indicated that D.L. had told Temple that he was gay, and had indicated that "he'd been with 30—30 something guys since he was 11 and he was meeting them on hookup sites."

4

a few times, but Temple rebuffed his advances. Temple explained that he took photographs of D.L. touching him so that he could show D.L.'s mother what D.L. was doing.

With respect to the incident in the grocery store parking lot, Temple claimed that he had gone with D.L. to that location only because D.L. had told him that he had been meeting other men there, and Temple wanted to sort out what had been going on so that he could tell D.L.'s mother. Temple denied touching D.L. in a sexual way, and claimed that he reclined the seats of his truck in order to "get [D.L.] talking." According to Temple, while Temple was distracted by his cell phone, D.L. took off his own shorts and "jumped" into Temple's lap. Temple "didn't really know how to react to that." He claimed that he told D.L. to "get back on his side of the car." Temple acknowledged that he did not tell D.L.'s mother about the incident, but said that this was because he did not think she would believe him.

Temple described the conversation he had with D.L.'s mother a few days after the grocery store parking lot incident. According to Temple, in response to her question as to whether something had happened between D.L. and Temple, Temple replied, "Sort of." He intended to tell her that D.L. had come on to him while they were in the truck, but she did not give him an opportunity to explain and instead, called the police.

Temple testified that when he was first interviewed by police, he said he had sex with D.L. in the parking lot because he was "frightened by what was going on." Temple claimed that during the second interview, he again told police that he had engaged in

5

sexual conduct with D.L. because he was "still slightly afraid of [D.L.'s mother] retaliating in some sort of way."

B.     *Procedural history*

Temple was charged with 15 counts of lewd acts on a child in violation of Penal Code section 288, subdivision (a), including 4 counts based on kissing, 10 counts based on illicit touching, and 1 count based on anal sex.  The information also charged Temple with one count of possessing child pornography in violation of Penal Code section 311.11, subdivision (a).  With respect to counts 1 through 11, the information alleged that appellant engaged in substantial sexual conduct with the victim within the meaning of Penal Code section 1203.066, subdivision (a)(8).

A jury convicted appellant of nine counts of lewd acts on a child (counts 1-6, 8, 10, 11), as well as the single count of possession of child pornography (count 14).[2]  With respect to counts 1 through 6 and count 8, the jury also found true the substantial sexual conduct enhancement allegations.

The trial court sentenced Temple to a total term of 20 years eight months in prison, which included the following terms:  the upper term of 8 years on count 1; six consecutive 2-year terms (one-third the middle term) on counts 2 through 6 and count 8; a consecutive eight-month term on count 14; and concurrent 8-year upper terms on counts 10 and 11.

Temple filed a timely notice of appeal.

---

2      The trial court declared a mistrial as to the remaining counts, which were ultimately dismissed.

III.

DISCUSSION

A.   *The trial court did not err in admitting evidence of text messages between Temple and two other individuals*

Temple contends that the trial court erred in admitting evidence of sexually explicit text messages sent between Temple and two other individuals regarding Temple's interest in engaging in sexual conduct with young boys.

1.   *Additional background*

Prior to trial, the prosecutor brought a motion in limine to admit evidence of sexually explicit text messages between Temple and two individuals, identified as "Kevin" and "Sir Anthony."  The prosecutor maintained that the messages were admissible to show Temple's intent and absence of mistake with respect to various incidents of alleged sexual misconduct with D.L., because Temple had claimed during his interviews with police that certain of these incidents involved D.L. initiating the touching and therefore could be viewed as "accidental" touching on Temple's part.  The prosecutor argued that the text messages showed that Temple had a sexual interest in children D.L.'s age, making it more likely that he had engaged in intentional lewd conduct with the victim.

Defense counsel argued that the text messages were extremely prejudicial, and that the issue of intent was not "such a big issue" because Temple had admitted to some of the conduct underlying the charges.

7

The trial court concluded that the text messages between Temple and "Kevin" and "Sir Anthony" were relevant to show Temple's intent, motive, and opportunity, as well as to show the absence of any mistake or accident on his part. The trial court further concluded that under Evidence Code section 352, the probative value of the text messages outweighed their potential for prejudice. The trial court ordered the prosecutor to redact the text messages to remove any references to Temple's sexual proclivities that were not references to his sexual interest in children.

Thereafter, during the prosecution's case-in-chief, one of the detectives who had interviewed Temple read some of the text messages to the jury and explained how her discovery of the text messages affected her investigation of Temple.

In the text messages between Temple and "Sir Anthony," "Sir Anthony" said to Temple, "We can find other young boys to serve just you and me. I have no age limits." Temple responded, "Me neither." Temple later said, "I want to fuck a 15 year old." In other messages to "Sir Anthony," Temple said, with respect to an 11-year-old, "He wants to be fucked so he deserves to be." In other messages, Temple described watching the Sea Cadets in the shower and said that there were some "10 to 13 year olds" that he would have sex with "in a second." Temple referenced one Sea Cadet boy who had come out to Temple, saying "he had a really, really, really nice dick and a perfect body."

In the text messages with "Kevin," Temple asked to see photographs of an 11-year-old boy, including "full body from both sides and some nice ass shots, pretty please." Temple also discussed having anal intercourse with "Kevin's" purported adopted children, who were described as being 9- and 11-year-old boys.

8

At the close of the evidence, the trial court gave a limiting instruction regarding the jury's use of the text message evidence:

"The People have presented evidence of other behavior by the defendant in this case that the defendant texted with third parties of their mutual sexual interests in 9- and 11-year-old boys and interest in sodomizing . . . 9- and 11-year-old boy[s]. You may consider this evidence only if the People have proved by a preponderance of evidence that the defendant, in fact, texted with these third parties regarding their mutual sexual interests in 9- and 11-year-old boys and interest in sodomizing . . . 9- and 11-year-old boy[s]. Proof by a preponderance of evidence is a different burden of proof than proof beyond a reasonable doubt. A fact is proved by a preponderance of evidence if you conclude that it is more likely than not that the fact is true. If the People have not met this burden, you must disregard this evidence entirely.

"If you do decide that the defendant texted with these parties about said sexual interest and sexual acts, you may but are not required to consider that evidence for the limited purpose of deciding whether or not the defendant acted with the intent to commit the act of willfully touching any part of a child's body either on the bare skin or through the clothing with the intent of arousing, appealing to or gratifying the lusts, passions, or sexual desires of himself or the child in this case; or the defendant had a motive to commit the offenses alleged in this case; or the defendant's alleged actions were [not] the result of mistake or accident; or the defendant had a plan or scheme to commit the offenses alleged in this case.

"In evaluating this evidence, consider the similarity or lack of similarity between the acts of texting these third parties regarding sexual interest in and sodomy of a 9- and 11-year-old boy and the charged offenses. Do not consider this evidence for any other purpose. Do not conclude from this evidence that the defendant has a bad character or is disposed to commit crime. If you conclude that the defendant committed these acts, that conclusion is only one factor to consider along with all of the other evidence. It is not sufficient by itself to prove that the defendant is guilty of lewd and lascivious acts or that he acted with substantial sexual conduct. The People must still prove each charge and allegation beyond a reasonable doubt."

9

During closing argument, the prosecutor reminded the jury that the text messages could be used only to prove intent, motive, plan or scheme, or absence of mistake.

2. *Analysis*

Evidence Code section 1101, subdivision (b) provides that the trial court may admit evidence that the defendant committed "a crime, civil wrong, or other act when relevant to prove some fact (such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or whether a defendant in a prosecution for an unlawful sexual act or attempted unlawful sexual act did not reasonably and in good faith believe that the victim consented) other than his or her disposition to commit such an act." Evidence of conduct by defendants similar to composing and sending the text messages at issue here has been determined to be admissible pursuant to Evidence Code section 1101, subdivision (b). For example, in *People v. Memro* (1995) 11 Cal.4th 786, 864 (*Memro*), the court concluded that evidence that the defendant possessed magazines and photographs depicting clothed and unclothed children was admissible pursuant to Evidence Code section 1101, subdivision (b), to prove the defendant's motive and intent to commit a lewd act on a child. (*Memro*, *supra*, at p. 864.) In *People v. Goldman* (2014) 225 Cal.App.4th 950, 959-960, the appellate court approved of the trial court's admission of evidence of sexually explicit text messages that the defendant had sent to one of his victims seven years after he molested her, concluding that the text messages were admissible to show the defendant's sexual interest in the victim.

Like the magazines and photographs in *Memro* and the text messages in *Goldman*, the text messages between Temple and "Kevin" and "Sir Anthony" demonstrated that Temple is sexually attracted to young boys the same age as the victim, and tended to show that any touching in which Temple engaged with the victim was done with the requisite intent. The evidence was relevant since the prosecutor was required to prove, pursuant to Penal Code section 288, that when Temple touched D.L., he had the "intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires" of himself or the victim. (Pen. Code, § 288, subd. (a).) These text messages also tended to show that Temple had a motive to engage in lewd conduct with the victim, that he had a plan to interact with D.L. in order to sexually molest him, and that any touching that occurred was not a result of accident or mistake.

Temple contends that the text messages should have been excluded because the question of his sexual "intent" was not truly at issue since he had admitted more than once that he had engaged in sexual activity with the victim. However, Temple specifically denied having sexual contact with D.L., both during his testimony at trial and during his second interview with police. Temple's intent in touching D.L. was clearly at issue in this case.

Temple also contends that the text messages consisted of "sexual fantasies" and therefore cannot constitute conduct for purposes of Evidence Code section 1101, subdivision (a). This contention is without merit. Temple's act of writing about his interest in having sexual contact with young boys is clearly conduct that tends to

11

demonstrate his intent, motive, plan or scheme, and lack of accident with respect to his sexual molestation of D.L.

Finally, we reject Temple's contention that even if the evidence was admissible under Evidence Code section 1101, the trial court should have excluded it pursuant to Evidence Code section 352 on the ground that this evidence was more prejudicial than probative. The text messages were probative of Temple's intent, and they constituted independent evidence that corroborated the testimony of the victim, which formed most of the People's case. Further, the messages were no more prejudicial than the direct evidence pertaining to the charged offenses. The trial court required the prosecutor to redact any potentially prejudicial comments that were not sufficiently related to the charges in this case. The trial court did not err with respect to the admission of the evidence of text messages between Temple and the two other individuals.

B.     *The trial court did not err in limiting the defense cross-examination of D.L.*
        *regarding his past sexual conduct*

Temple contends that the trial court erred in excluding evidence of D.L.'s prior sexual conduct, and thereby violated Temple's right to present a defense, his right to confront witnesses, and his right to due process. We conclude that the trial court did not err in this regard. First, the trial court did not exclude the evidence; rather, the court limited the presentation of such evidence. Further, defense counsel never formally requested to be permitted to introduce additional evidence of D.L.'s sexual conduct by way of cross-examination of the victim, which is a prerequisite to the introduction of such evidence, pursuant to the rape shield law. Finally, even if Temple had not forfeited

12

any claim that he should have been permitted to cross-examine the victim regarding his prior sexual conduct, the trial court's ruling limiting the presentation of such evidence was proper.

1. *Additional background*

Prior to trial, the prosecutor sought to limit the presentation of evidence of D.L.'s prior sexual history. The prosecutor proffered that during a police interview, Temple claimed that D.L. had engaged in previous sexual relationships with approximately 30 men. Temple had indicated that he was trying to counsel D.L. about these relationships when he drove D.L. to the grocery store parking lot. The prosecutor sought to prevent the defense from cross-examining the victim regarding these alleged prior sexual relationships, arguing that the victim's sexual history was irrelevant to the charged offenses.

The trial court agreed with the prosecutor, and concluded that permitting defense counsel to cross-examine the victim regarding his prior sexual history would be highly prejudicial and could violate the rape shield law. The trial court therefore ruled that defense counsel would not be permitted to cross-examine the victim regarding this sexual history. However, the trial court deferred ruling on whether defense counsel would be permitted to question Temple regarding Temple's claims about his purpose in driving D.L. to the grocery store parking lot—i.e., to counsel D.L. with respect to his many sexual relationships with other men—if Temple were to testify at trial. The trial court later ruled that it would not permit "discussion about the 30 men or so" on the ground that this would be unduly prejudicial under Evidence Code section 352.

13

2.    *Analysis*

Although Temple argues that the trial court "excluded" evidence of D.L.'s prior sexual conduct, this is not an accurate description of the trial court's ruling.

For example, Temple contends that the trial court "erred by redacting appellant's interview with police in order to exclude his statements regarding [D.L.'s] prior sexual activities." As the People point out, however, the redaction never occurred. Although the prosecutor initially attempted to redact portions of the interview to eliminate references to the victim's prior sexual conduct, she later stated that she would proffer Temple's statement without redaction of the references to the victim's alleged prior sexual history. During trial, Temple's statement to police was admitted *without redaction*. In the statement, Temple claimed that he took D.L. to the grocery store parking lot to talk to him because he had heard that D.L. had been with 30 or so men whom he had met on various "hookup sites." The transcript of a subsequent interview that was admitted in evidence included another reference by Temple to the effect that D.L. had told Temple that he'd "been with over thirty guys." Further, when Temple testified at trial, he stated that he had taken D.L. to the grocery store parking lot because D.L. had told him that he was meeting other men there, and Temple wanted to figure out what was going on so that he could tell D.L.'s mother about it. According to Temple, he went there wanting to talk with D.L. about how D.L. was "hooking up" with men.

It is thus clear that evidence of D.L.'s prior sexual conduct was not entirely excluded. In fact, the jury heard both of Temple's statements about D.L.'s sexual history, as well as Temple's trial testimony in which he said that he had taken D.L. to the grocery

14

store parking lot in order to talk to him about his sexual conduct. Temple was able to present to the jury his explanation as to why he was in the grocery store parking lot with D.L. on the day in question.

Further, although Temple contends on appeal that the trial court erred in not permitting him to cross-examine D.L. regarding his sexual history, the record discloses that Temple did not formally request to be permitted to cross-examine the victim on this issue. "A defendant generally cannot question a sexual assault victim about his or her prior sexual activity. [Citation.] However, a limited exception [may apply] if the victim's prior sexual history is relevant to the victim's credibility." (*People v. Bautista* (2008) 163 Cal.App.4th 762, 781-782 (*Bautista*), citing Evid. Code, § 1103, subd. (c)(4); *People v. Chandler* (1997) 56 Cal.App.4th 703, 707.) "In prosecutions brought pursuant to section 288, Evidence Code section 782 provides for a strict procedure that includes a hearing outside of the presence of the jury prior to the admission of evidence of the complaining witness's sexual conduct. [Citations.] Evidence Code section 782 is designed to protect victims of molestation from 'embarrassing personal disclosures' unless the defense is able to show in advance that the victim's sexual conduct is relevant to the victim's credibility." (*Bautista*, *supra*, at p. 782.)

Evidence Code section 782 provides in pertinent part:

> "(a) In any of the circumstances described in subdivision (c) [which includes prosecutions pursuant to Penal Code section 288], if evidence of sexual conduct of the complaining witness is offered to attack the credibility of the complaining witness under Section 780, the following procedure shall be followed:

15

"(1) A written motion shall be made by the defendant to the court and prosecutor stating that the defense has an offer of proof of the relevancy of evidence of the sexual conduct of the complaining witness proposed to be presented and its relevancy in attacking the credibility of the complaining witness.

"(2) The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated. The affidavit shall be filed under seal and only unsealed by the court to determine if the offer of proof is sufficient to order a hearing pursuant to paragraph (3). After that determination, the affidavit shall be resealed by the court.

"(3) If the court finds that the offer of proof is sufficient, the court shall order a hearing out of the presence of the jury, if any, and at the hearing allow the questioning of the complaining witness regarding the offer of proof made by the defendant.

"(4) At the conclusion of the hearing, if the court finds that evidence proposed to be offered by the defendant regarding the sexual conduct of the complaining witness is relevant pursuant to Section 780, and is not inadmissible pursuant to Section 352, the court may make an order stating what evidence may be introduced by the defendant, and the nature of the questions to be permitted. The defendant may then offer evidence pursuant to the order of the court.

"(5) An affidavit resealed by the court pursuant to paragraph (2) shall remain sealed, unless the defendant raises an issue on appeal or collateral review relating to the offer of proof contained in the sealed document. If the defendant raises that issue on appeal, the court shall allow the Attorney General and appellate counsel for the defendant access to the sealed affidavit. If the issue is raised on collateral review, the court shall allow the district attorney and defendant's counsel access to the sealed affidavit. The use of the information contained in the affidavit shall be limited solely to the pending proceeding."

Temple did not file a written motion, nor did he submit an accompanying affidavit, as required pursuant to Evidence Code section 782. He therefore forfeited his contention that the trial court erred in not permitting his attorney to cross-examine D.L. regarding D.L.'s prior sexual conduct.

16

We reject Temple's attempt to frame this as a constitutional issue in order to avoid the procedural requirements of Evidence Code section 782. If Temple's attorney had believed that cross-examination of D.L. on this issue was truly significant to his defense, then defense counsel could have filed a motion pursuant to Evidence Code section 782 seeking permission to do so from the court. The mere existence of this evidentiary rule does not necessarily impinge on a defendant's right to present a defense, since it permits a court to allow for cross-examination regarding a complaining witness's prior sexual conduct where that conduct is relevant to the witness's credibility.

Finally, even if Temple had not forfeited his challenge to the trial court's limitation on cross-examination of D.L. regarding D.L.'s sexual history, we would conclude that the trial court did not abuse its discretion in limiting cross-examination on this topic. (See *Bautista*, *supra*, 163 Cal.App.4th at p. 782 [a trial court's ruling on the admissibility of prior sexual conduct is reviewed for an abuse of discretion].) Temple contends that if he had been permitted to cross-examine D.L. about his sexual history, he would have been able to "challenge [D.L.'s] claim that appellant had sex with him in his car in the store parking lot, rather than talk to him about his promiscuity with other men." It is not clear how cross-examining D.L. about his sexual history would "challenge" D.L.'s claim that Temple had sex with D.L. in the parking lot. The extent of D.L.'s sexual history neither proves nor disproves whether D.L. and Temple ultimately engaged in the charged sexual act that day. It is entirely possible that Temple originally intended to "counsel" D.L. when they went to the grocery store parking lot, but this does not preclude a finding that they *also* engaged in intercourse that day. Whether D.L. had previously engaged in sex

with one other man or as many as 30 other men, as Temple contended, was simply irrelevant to the question the jury had to decide, which was whether Temple and D.L. engaged in sex in the grocery store parking lot. The trial court therefore would not have abused its discretion in limiting cross-examination of D.L. concerning his sexual history, even if Temple had not forfeited this issue.

## IV.

## DISPOSITION

The judgment of the trial court is affirmed.


AARON, J.

WE CONCUR:

HUFFMAN, Acting P. J.

HALLER, J.

18